Velma MAUER, Plaintiff,

v.

Duane ROHDE et al., Defendants.

THORP CREDIT, INC.,
Defendant-Cross-Petitioner-Appellee,

v.

William F. RYAN and Charlene Ryan,
Defendants-Appellants.

No. 2–58530.

Supreme Court of Iowa.

Aug. 31, 1977.

William B. Perry, Storm Lake, for appellants, William F. Ryan and Charlene Ryan.

E. Ralph Walker, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellee, Thorp Credit, Inc.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON, and McCORMICK, JJ.

REYNOLDSON, Justice.

In this declaratory judgment action involving title to a residence property, trial court held for plaintiff Velma Mauer, declared void a sheriff's deed to defendants Ryan, and established the priority of the mortgage lien of defendant cross-petitioner Thorp Credit, Inc. We affirm in part, reverse in part, and remand.

This litigation spins off from a number of suits brought in Sac County in the 1960's in which L. H. Wagener, Inc., Martin Mauer Construction Company, Martin Mauer, Velma Mauer, Merle Quirk, and others were parties. By order dated May 19, 1967, eight of these lawsuits were consolidated.

One of the consolidated cases was no. 13340, filed February 14, 1967, in which L. H. Wagener, Inc. was plaintiff and Martin Mauer Construction Co., Inc. was defendant. This was an action on an unsecured promissory note in the amount of $25,000.

October 27, 1970, an amended and substituted petition was filed in no. 13340. Martin Mauer and Merle Quirk were added as defendants. It was asserted the money owed to plaintiff had been invested in certain described real estate, which included the property involved in the case before us. The petition prayed for judgment of $25,-000, statutory attorney fees and costs, that the judgment be decreed a lien on described property "from date of filing this action," and that it be sold on special execution to satisfy the judgment. Similar amended petitions filed in two of the other lawsuits are of only peripheral concern here.

The amended petition described a homestead owned by Martin Mauer and occupied by him and his wife, Velma, for almost 20 years.

December 9, 1970, Martin Mauer conveyed the homestead to Velma. On the same date, Martin and Velma executed and delivered to Thorp Credit, Inc. a mortgage on this property to secure a promissory note for $167,814.68, executed by Thomas S. Johnson and Velma Mauer. This mortgage was recorded the same date. The evidence indicates the mortgage proceeds were used to release several prior encumbrances.

Abstractor's searches on December 3, 1970, December 10, 1970, and January 11, 1971, did not disclose the "lis pendens" Ryans allege was generated by the October 27, 1970 amended and substituted petition. It had not been docketed so as to provide notice to third parties under § 617.11, The Code. Nor had the action been indexed on February 8, 1972, when a search was made by a different abstractor preparatory to foreclosure by Thorp Credit, Inc.

In March, 1972, the lis pendens index book pages were laminated. Backdated indexing notations relating to case no. 13340 were later discovered to have been written on the surface of the lamination. Thiessen, one of the abstractors, testified he found the deputy clerk making the backdating entries. The latter told Thiessen this was being done at the request of L. H. Wagener, who was present during the conversation. Thiessen's recollection of this incident placed the date earlier than the above physical evidence indicates the backdating occurred, but later than the execution and filing of the Thorp mortgage.

February 10, 1973, L. H. Wagener, Inc., L. H. Wagener and his wife Dorothy Wagener, Martin Mauer Construction Company, Martin Mauer and Velma Mauer entered into a settlement stipulation for disposition of seven of the above lawsuits, including no. 13340. It provided, *inter alia*, for judgments in favor of the "parties Wagener" against "the corporate defendants bearing the name Mauer," Martin Mauer and Velma Mauer. Deficiency judgments against Martin and Velma Mauer were waived "above any recovery from real property described in Wagener petitions as amended." It was further stipulated that,

> "No general execution shall be issued on said judgment. Special execution may issue thereon against the real property described in the Amended and Substituted Petitions, 13340, 13341, and 13354, and shall not be issued against any other real or personal property of Martin Mauer or Velma Mauer."

Causes of action against other named parties were to be dismissed.

A separate agreement provided for assignment of rights of redemption by "parties Mauer" to "parties Wagener," and gave the former a two-year option to repurchase their residence (the property here involved) for $15,000.

Pursuant to the stipulation in case no. 13340, the judgment presented to and executed by the court on February 15, 1973, awarded L. H. Wagener, Inc., a $42,252.14 judgment against Martin Mauer Construction Company and Martin Mauer and provided,

> "that the lis pendens of plaintiff filed herein by way of amended and substituted petition herein [sic] October 27, 1970, is hereby ratified, approved and confirmed as of said date, the lien of the judgment and decree herein shall constitute a lien against the aforesaid real estate relating back to date of October 27, 1970 * * *."

Of course, Thorp was not noticed nor was it a party to the 13340 action. Thorp commenced its own foreclosure action February 10, 1972. Pursuant to a stipulation and confessions of judgment, a decree was entered in the Thorp foreclosure on April 16, 1973. It awarded Thorp a $56,000 judgment against Velma Mauer, declared the mortgage a lien on the Mauer homestead from its date, December 9, 1970, and provided for execution and sale.

March 14, 1974, special execution issued on the Wagener judgment. Levy was made on the Mauer homestead. At sheriff's sale the property was purchased for $500 by Term Leasing Corp., alleged to be owned solely by L. H. Wagener. The certificate of purchase was assigned to William F. Ryan and Charlene Ryan, husband and wife. Further assigned to Ryans was the assignment of right of redemption initially executed by the Mauers in favor of Dorothy Wagener. The sheriff's deed to Ryans was dated August 8, 1974.

Apparently learning of the above litigation, Thorp persuaded Velma Mauer to file the instant petition for declaratory judgment on September 11, 1974. Named defendants were Sac County sheriff Duane K. Rohde, William F. and Charlene Ryan, Thorp and Term Leasing. The petition raised technical objections relating to sale of the homestead on the Wagener execution, and prayed that the sheriff's deed be set aside and defendants Ryan be enjoined from removing plaintiff from her home.

No relief was prayed for as against Thorp. The latter answered and filed a cross-petition against the other defendants, asserting its mortgage lien was superior to any interest of Ryans in the property, that it had no notice of any action in the Wagener proceeding "that would affect the rights, title and interest of Defendant/Cross-Petitioner, Thorp Credit, Inc. in and to the property described herein." Thorp prayed for declaratory judgment that its right, title and interest in the property be declared paramount and superior to every right, title and interest which might be claimed by the other defendants and that the sheriff's deed be set aside and all proceedings in connection therewith be declared null and void.

Ryans filed a motion to drop Thorp as an improperly joined party under R.C.P. 27(a),

a motion to strike Thorp's answer and cross-petition as an improperly joined action under R.C.P. 27(b) (asserting the cross-petition was a collateral attack on the Wagener judgment), and a second motion to strike the cross-petition as unauthorized under R.C.P. 33(a). These motions were overruled.

Ryans, answering the petition, pled the prior Wagener judgment and underlying stipulation, asserting waiver, estoppel, and res judicata. Their answer to the cross-petition was the equivalent of a general denial.

Briefs filed below by Thorp directly attacked the validity of the alleged lis pendens created by the Wagener amended and substituted petition. Attached were copies of certain bankruptcy court findings dated April 19, 1974, in proceedings involving Thomas S. and Corinne M. Johnson. These debtors had acquired a portion of the property in litigation from Mauer. L. H. Wagener, Inc., represented by the same counsel who later represented Ryans, filed lien claims in the Johnson bankruptcy based upon the "lis pendens" and subsequent judgments in cases numbered 13340, 13341 and 13354.

The bankruptcy court made specific findings relating to the backdating in the lis pendens index, held the judgments of the Iowa district court null and void as purporting to establish liens on the Johnson property, and rejected the lien creditor claim of L. H. Wagener, Inc.

Certified copies of these bankruptcy papers together with transcripts from a related July, 1973, hearing were offered as evidence in this case, and objected to as constituting a collateral attack on the Wagener judgment establishing the retroactive lien.

Without passing on the merits of the objection, we note these exhibits disclose the issue of the validity of the alleged lis pendens in relationship to the Thorp lien was litigated below.

Following trial, the ruling and decree in the case before us was filed May 5, 1975. District court found the backdating was done at Wagener's request, that the cause of action in the amended petition was not an action "affecting real estate" as required by § 617.10, The Code, and therefore was not entitled to lis pendens status and indexing. The purported filings were declared invalid, void and of no effect. The court held the sheriff's deed to Ryans void and confirmed the title to the real estate in Velma Mauer subject to Thorp's mortgage lien. The decree provided "[a]ll other judgments affecting plaintiff's real estate are inferior and junior to Thorp Credit, Inc.'s mortgage."

Ryans filed a motion to set the decree aside and for new trial, and a motion for a decree in their favor, asserting the invalidity of the lis pendens in case no. 13340 was not alleged and no relief prayed for on account thereof, the bankruptcy court record was not res judicata or binding on the Iowa court, trial court ignored the various instruments executed by Velma Mauer relating to the cause no. 13340 decree, lien, assignment of equity of redemption and sheriff's sale. Ryans further asserted R.C.P. 253 barred any collateral attack on the February 15, 1973, Wagener judgment in no. 13340.

Ryans' motions raised for the first time the unenforceability of the Thorp judgment and lien under § 615.1, The Code, because no special execution had been issued thereon within two years from date of entry of the Thorp foreclosure decree. These motions were overruled. Trial court noted the Wagener suits were not entitled to lis pendens filing, consequently the court in no. 13340 had no jurisdiction and its judgment was void. Amplifying its prior decree, the court found the lis pendens docket predating was a fraud upon the court and Thorp, holding, "Fraud vitiates everything. A decree fraudulently entered is a nullity."

Ryans appealed. The § 615.1 issue is not raised on this appeal, but was raised in the Thorp foreclosure action by a motion under R.C.P. 256. An adverse ruling there has been appealed by Ryans and is affirmed in a companion opinion filed this date.

The several issues Ryans raise in this appeal are treated in the divisions which follow.

I. *Was Thorp a properly joined party in this action?*

Joinder of defendants is governed by rule 24(a), R.C.P.:

"Any number of defendants may be joined in one action which asserts against them, jointly, severally or in the alternative, any right to relief in respect of, or arising out of the same transaction, occurrence, or series of transactions or occurrences, when any question of law or fact common to all of them is presented or involved."

Although Mauer's petition in this case alleged the Thorp mortgage and April 16, 1973 foreclosure, the prayer asks for no relief as against Thorp. In a technical sense, therefore, the action cannot be said to assert "against them [the defendants], jointly, severally or in the alternative, any right to relief * * *." Rule 24(a), supra.

On the other hand we have described rule 24(a) as a "broad rule." *Wheeler v. Waller,* 197 N.W.2d 585, 589 (Iowa 1972). A liberal construction has been encouraged. 1 Vestal & Willson, Iowa Practice § 22.01(2), at 385 (1974). In *Wright v. Standard Oil Co.,* 234 Iowa 1241, 1243, 15 N.W.2d 275, 277 (1944), we said:

"The general principle of equity practice is that all persons materially interested, either legally or beneficially, in the suit or proceeding, or possessing a community of interest therein, should be joined as either plaintiffs or defendants thereto, irrespective of the relative importance or degree of interest of their relationship, in order that a complete decree may be made between them."

■ Basic title questions involving the same real estate were raised by the petition and the cross-petition. Joinder here avoided needless multiplicity of suits. See *Ambrose v. Harrison Mutual Insurance Assn.,* 206 N.W.2d 683, 686 (Iowa 1973). In equity a court may determine and decree as to the rights of the parties regardless of their positions as plaintiffs or defendants, and in a proper case may adjust rights and award relief as between co-plaintiffs and co-defendants. *Holi-Rest, Inc. v. Treloar,* 217 N.W.2d 517, 523 (Iowa 1974).

■ Overruling Ryans' motions to drop Thorp as a party defendant and strike the cross-petition, trial court logically observed the cross-petition raised matters which were proper subjects of joinder by way of petition of intervention, and that the cross-petition was filed before the motion to drop party.

Thorp's "cross-petition" could have been filed as a separate action and consolidated with this case for trial, or filed in this case as a petition of intervention. See rule 75, R.C.P. The result in each event would be the same. Ryans do not reveal how they were prejudiced by trial court's ruling on these motions. We are not persuaded to reverse now and further prolong this lengthy litigation on the basis of what at most could be classified only as a technical procedural irregularity. See *Stearns v. Stearns,* 187 N.W.2d 733, 734 (1971).

II. *Did trial court base its decree on matters not raised by the parties' pleadings or prayers for relief?*

■ Essentially this issue is one of claimed variance between the pleaded issues and the proof. There is no variance between the prayers for relief and the relief granted, which was precisely what Velma Mauer and Thorp requested.

The gist of Ryans' complaint is that neither the petition nor the cross-petition directly attacked the validity of its alleged lis pendens filing in cause no. 13340. However, we have noted Thorp's briefs argued this point at length. Thorp prayed that the superiority of its mortgage lien be established.

Rule 106, R.C.P. provides, "No variance between pleading and proof shall be deemed material unless it is shown to have misled the opposite party to his prejudice in maintaining his cause of action or defense. * * *." We have been reluctant to re-

verse on the basis of a claimed variance. *Thomas v. Blecker*, 181 N.W.2d 129, 131 (Iowa 1970); Vestal & Willson, Iowa Practice § 34.22, at 56.

Ryans' counsel in this litigation was attorney for L. H. Wagener, Inc. in the Johnson bankruptcy matter. Counsel had to be well aware of the issues relating to the retroactive lien in cause no. 13340. Ryans make no showing below or here that they were misled or prejudiced by the asserted variance. Nor does the transcript of this trial reflect any objection to evidence grounded on variance.

We find no merit in this proposition relied on for reversal.

### III. *Did trial court permit a collateral attack on prior judgment?*

We here treat Ryans' remaining contentions which are worthy of consideration.

Ryans assert this proceeding was a collateral attack on the prior Wagener judgment. See *Fetters v. Degnan*, 250 N.W.2d 25, 30 (Iowa 1977). That judgment, they contend, was a final adjudication of the validity of the lis pendens which could only be attacked by a direct proceeding in cause no. 13340 as provided for in rules 252 and 253, R.C.P.

We first consider these assertions as they relate to plaintiff Velma Mauer.

Velma Mauer's petition sought to enjoin a separate forcible entry proceeding and prayed for judgment setting aside the sheriff's deed to Ryans for violation of sheriff's sale procedures. All these alleged events occurred subsequent to the judgment in cause no. 13340 from which she did not appeal. She did not raise in this litigation the validity of the "lis pendens" in no. 13340. At the trial in the case before us she offered documentary evidence concerning the sheriff's sale and a transcript of her discovery deposition. Her deposition testimony acknowledged execution of the various instruments which resulted in judgment and execution of the assignment of her right of redemption. The sheriff's return shows Velma Mauer was given notice of the sale. She acknowledged she had actual notice.

The situation is unique because Velma Mauer was not a party to the 13340 action at any time although she executed the stipulation and instruments which subjected her property to the judgment entered. However, she raises no issues relating to this fact or to Chapter 676, The Code (judgment by confession) or Chapter 678, The Code (submitting controversies without action). See 49 C.J.S. Judgments § 137, p. 271 (1947).

In any event, we find nothing in the allegations of the Velma Mauer petition or in her proof submitted to justify setting aside the sheriff's deed to Ryans. The judgment entered in no. 13340 was the judgment she agreed to have entered. The operative portion of the judgment she consented to inexorably resulted in the sheriff's deed.

Trial court made no finding relating to any of Velma Mauer's contentions. She is a beneficiary of trial court's finding of lack of jurisdiction and fraud in the attempt by L. H. Wagener, Inc. to obtain lis pendens status for its action. These were issues vigorously pressed by Thorp.

■ Examining the lack-of-jurisdiction ground, it is true that a judgment entered without subject matter jurisdiction may be subjected to collateral attack. *Marshfield Homes, Inc. v. Eichmeier*, 176 N.W.2d 850, 851 (Iowa 1970); *Peterson v. Eitzen*, 173 N.W.2d 848, 850 (Iowa 1970). Subject matter jurisdiction ordinarily means the power to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the attention of the court. *State v. Iowa Co-Operative Assn.*, 248 Iowa 167, 169–170, 79 N.W.2d 775, 776 (1956); 20 Am. Jur.2d Courts § 105, pp. 464–465 (1965); 21 C.J.S. Courts § 35, pp. 43–46 (1940).

Before the district court in cause no. 13340 was a petition asking for judgment on a promissory note and also praying the judgment be established as a lien on certain described real estate. The titleholder was

before the court by stipulation filed in the case. The real estate was situated in Iowa.

In our view the amended and substituted petition was not a "petition affecting real estate" so as to qualify for indexing pursuant to § 617.11, The Code. See Marshall, Iowa Title Opinions and Standards, Annotated § 11.9 (1970 Cum.Supp.); 54 C.J.S. Lis Pendens § 9, pp. 577–578 (1948). However, we are not persuaded district court had no jurisdiction to decide the type of controversy involved, or, in the peculiar circumstances of this case, enter judgment creating a lien on real estate in conformance with the titleholder's consent. See *Travelers Indemnity Company v. Cormaney*, 258 Iowa 237, 248, 138 N.W.2d 50, 57 (1965). We treat below the question whether the purported retroactive feature of the lien thus created had any effect on Thorp's mortgage lien.

The second ground trial court based its ruling on was fraud. A judgment may be collaterally attacked for fraud. *Reimers v. McElree*, 238 Iowa 791, 796, 28 N.W.2d 569, 571 (1947); 49 C.J.S. Judgments § 401, at 792–793 (1947). However, the fraud must be extrinsic. See *Peterson v. Eitzen, supra*, 173 N.W.2d at 850; *City of Chariton v. Blunk Construction Company*, 253 Iowa 805, 822, 112 N.W.2d 829, 838 (1962).

Intrinsic fraud "occurs within the framework of the actual conduct of the trial and pertains to and affects the determination of the issue presented therein. It may be accomplished by perjury, or by the use of false or forged instruments, or by concealment or misrepresentation of evidence." *Auerbach v. Samuels*, 10 Utah 2d 152, 155, 349 P.2d 1112, 1114 (1960); A. Vestal, Res Judicata/Preclusion, p. V–418 (1969).

Extrinsic fraud, on the other hand, has been described as that fraud which keeps a litigant from presenting the facts of his or her case and prevents an adjudication on the merits. Examples of extrinsic fraud are a bribed judge, dishonest attorney representing the defrauded client, or a false promise of compromise. See A. Vestal, Res Judicata/Preclusion, supra, at V–418, and citations; *cf. United States v. Throckmorton*, 98 U.S. 61, 65–66, 25 L.Ed.2d 93, 95 (1878).

While the above distinction is not always clear cut, we believe if there was fraud in this case, as opposed to unsavory overreaching, it was intrinsic and not extrinsic. The decree in this case contains the finding that Wagener "appeared at the clerk's office with his amended and substituted petitions in the various cases and asked one of the clerks to place them on the lis pendens index as of the date of the filing of the original petitions." There is an inference trial court believed the Thorp mortgage antedated the amended and substituted petition. But the record discloses the Thorp mortgage was created and filed after the amended and substituted petition was filed, but before that petition was indexed. Wagener's request was to post-index its filing of the amended petition, not the original petition. This factual misconception may have influenced trial court's finding of fraud.

With respect to Velma Mauer, we hold the judgment for special execution, and the sheriff's sale in cause no. 13340, must stand. Neither lack of subject matter jurisdiction nor extrinsic fraud is an available ground to grant her relief in the case before us.

But Thorp stands in a different position in relation to the Ryans. Ryans make no pretense they are good faith purchasers of the Mauer homestead. They rely entirely on the claimed lis pendens feature of the Wagener amended and substituted petition, a position they consider unassailable in view of the retroactive lien language of the judgment in cause no. 13340.

Although Ryans argue res judicata, it is clear they assert the subsumed concept known as issue preclusion. See *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971).

In the emerging area of preclusion we adhere to principles recently articulated.

■ Ordinarily one who has not had an opportunity to litigate an issue is not bound by an adverse ruling in another suit and is entitled to his or her day in court. *Edmundson v. Miley Trailer Co.*, 252 N.W.2d 415, 420 (Iowa 1977); *Schwarz Farm Corp. v. Board of Sup. of Hamilton Co.*, 196 N.W.2d 571, 576 (Iowa 1972); see *Mizer v. State Automobile & Casualty Underwriters*, 195 N.W.2d 367, 370 (Iowa 1972).

■ From this rule it follows identity of parties or privity is ordinarily required for a finding of res judicata. *National Farmers Union Property & Cas. Co. v. Nelson*, 260 Iowa 163, 171, 147 N.W.2d 839, 844 (1967); *In re Richardson's Estate*, 250 Iowa 275, 281, 93 N.W.2d 777, 781 (1958). This rule has been modified where the issue preclusion doctrine is involved defensively against a party who was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and properly be bound by its resolution. *Goolsby*, supra, 189 N.W.2d at 915–917; see *Bertran v. Glens Falls Insurance Company*, 232 N.W.2d 527, 533 (Iowa 1975).

■ Issue preclusion may be determinative only where four requirements are established:

"(1) The issue concluded must be identical.

"(2) The issue must have been raised and litigated in the prior action.

"(3) The issue must have been material and relevant to the disposition of the prior action, and

"(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment."

*Trushcheff v. Abell-Howe Co.*, 239 N.W.2d 116, 132 (Iowa 1976), quoting *Schneberger v. United States Fidelity & Guar. Co.*, 213 N.W.2d 913, 917 (Iowa 1973).

■ Applying these principles to the situation before us, we hold Thorp's interest in the Mauer homestead is not affected by the defense of issue preclusion.

Ryans attempt to use the judgment in cause no. 13340 defensively against a stranger to that litigation. See *Edmundson v. Miley Trailer Co., supra*, 252 N.W.2d at 419. None of the requirements for issue preclusion are present in this case as it relates to Thorp's cross-petition. The fighting issue here is the priority of Thorp's mortgage lien vis-a-vis the "lien" retroactively established in the judgment obtained by L. H. Wagener, Inc.

The record before us discloses this question was neither pled nor litigated in the prior action. Although the judgment in cause no. 13340 was framed to impose Wagener's lien from the date of filing the amended and substituted petition, the priority issue was not material or relevant to the disposition in that litigation, nor was that determination necessary and essential to the Wagener judgment. The latter judgment does not rest on the alleged fact of lien priority, it rests on a stipulated agreement which failed to mention the Thorp mortgage. See *Bickford v. American Interinsurance Exchange*, 224 N.W.2d 450, 455 (Iowa 1974); *Schneberger v. United States Fidelity & Guar. Co., supra*, 213 N.W.2d at 917.

We reach the same result by applying another test, that is, whether the same evidence will maintain both this action and the prior action. *B & B Asphalt Co. v. T. S. McShane Co.*, 242 N.W.2d 279, 287 (Iowa 1976); *In re Marriage of Kurtz*, 199 N.W.2d 312, 315 (Iowa 1972); *Young v. O'Keefe*, 248 Iowa 751, 756, 82 N.W.2d 111, 114 (1957). It is obvious that test is not met here.

■ Ordinarily a person precluded from litigating a matter (1) has had the opportunity to so litigate, or (2) has had his or her interests adequately represented in the prior litigation. A. Vestal, Res Judicata/Preclusion, supra, at V–338. In this case there is no claim Thorp had the opportunity to litigate in prior cause no. 13340. It is equally clear its interests as a mortgagee were not represented by Velma Mauer, its mortgagor.

**498**

Nor do we believe there was "privity" between Velma Mauer and Thorp in the traditional sense of a mutual or successive relationship to the *same* rights of property so as to bind Thorp by the prior judgment. See *In re Richardson's Estate, supra*, 250 Iowa at 281–282, 93 N.W.2d at 78.

It is true that if the 13340 petition had been one "affecting real estate" within the purview of § 617.10, The Code, and had been properly indexed in conformance with §§ 617.11 and 606.10, The Code, Thorp could not have acquired an interest "in the subject matter thereof as against the plaintiff's rights." § 617.11, The Code; see *Moser v. Thorp Sales Corporation*, 256 N.W.2d 900, 911 (Iowa 1977); *Joneson v. Joneson*, 251 Iowa 825, 830–834, 102 N.W.2d 911, 914–915 (1960). But it was neither such a petition nor so indexed. At most, L. H. Wagener, Inc. was attempting the equivalent of a retroactive attachment without meeting statutory requirements or posting bond. See Chapter 639, The Code.

We hold Ryans' right, title and interest in and to the subject property are inferior to the rights of Thorp under its mortgage and foreclosure, and subject to the rights of any purchasers at any sale pursuant to the Thorp foreclosure.

The decree below is therefore affirmed in part, reversed in part and this cause is remanded for decree in conformance herewith.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.